[Crim. No. 11452. In Bank. Mar. 26, 1968.]

In re DONALD FLOYD KETCHEL on Habeas Corpus.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and John T. Murphy, Deputy Attorneys General, for Appellant.

Benjamin Dreyfus, under appointment by the Supreme Court, and Garry, Dreyfus, McTernan & Brotsky for Respondent.

TOBRINER, J.—After defendant's conviction of murder in the first degree and sentence to death, this court appointed counsel on the automatic appeal (Pen. Code, § 1239, subd. (b)). ▆▆▆ We now face a narrow issue: whether we should affirm the trial court's order to the warden of the penitentiary to permit the examination of defendant by a psychiatrist selected by that counsel. Since we hold that counsel is entitled to full communication with his client by direct interview or by interviews through experts who may aid counsel, and since we cannot see how the interview would interfere with the safe maintenance of the penitentiary, we affirm the order.

As we shall explain, the courts clearly hold that the right to counsel at trial includes the right to the assistance of experts, such as psychiatrists or psychologists.[1] Although the Attorney General correctly argues that normally such assistance differs at the appellate from the trial stage because the completed record precludes the introduction of further testimony, that factor alone should not negate defendant's right of unfettered communication with his counsel and those who aid counsel. As we shall show, the Attorney General offers no reason grounded in prison safety or administration for refusal of the opportunity of such communication, and the trial court found none.

Upon concluding that a psychiatric examination of his client would be useful, defendant's counsel, on June 2, 1967, wrote the warden at San Quentin as follows: "My investigation of the case and of the record on appeal has brought me to the conclusion that it is necessary, in order adequately to represent the defendant on appeal and to prepare this brief on his behalf, to cause Mr. Ketchel to be examined by a psychiatrist, and equally by a psychologist, should the psychiatrist deem the further examination necessary. I require the reports of these physicians in order properly to represent Mr. Ketchel on appeal. Dr. Fariborz Amini, a distinguished psychiatrist on the staff of Langley Porter Clinic of the University of California Hospital, has consented to make the necessary examination and report. I respectfully request that Dr. Amini be permitted to visit and examine Mr. Ketchel and that necessary arrangements for his visit there [at San Quentin] be made.

On June 5, 1967, the warden replied that it was not "the

---

[1] In using the term "psychiatrist" in this opinion we include the term "psychologist."

policy of the Department of Corrections . . . to permit examinations of condemned men by staff other than specified in [the Penal Code] . . . ." Ketchel then brought this writ of habeas corpus in the Superior Court of Marin County,[2] requesting that the warden be compelled to allow the examination.

After a hearing on Ketchel's habeas corpus petition, the superior court ordered the warden "to permit counsel for petitioner herein to have petitioner examined by Dr. Fariborz Amini, and by a psychologist if such examination is considered necessary by said Dr. Fariborz Amini. It is further ordered that said examinations shall be conducted at the California State Prison, San Quentin, California, at a reasonable time, or times selected by counsel for the petitioner." The People appealed from this order and, pursuant to article VI, section 11, of the California Constitution and Penal Code, section 1506, obtained a transfer of the appeal to this court.

The cases have held that the right to an effective counsel at trial includes not only the personal advice and service of counsel but also the aid and advice of experts whom counsel deems useful to the defense and, in particular. the services of a psychiatrist. (*In re Ochse, supra,* 38 Cal.2d 230.) "A fundamental part of the constitutional right of an accused to be represented by counsel is that his attorney must be afforded reasonable opportunity to prepare for trial. . . . To make

---

[2]Although the courts have uniformly held that a petition for habeas corpus in a superior court constitutes a proper method for establishing that prison officials have interfered with a prisoner's right to effective assistance of counsel (*In re Ochse* (1951) 38 Cal.2d 230 [238 P.2d 561]; *In re Allison* (1967) 66 Cal.2d 282 [57 Cal.Rptr. 593, 425 P.2d 193]), the Attorney General contends that the Superior Court of Marin County lacked jurisdiction to consider Ketchel's petition. In particular, the Attorney General argues that, because defendant's automatic appeal (Pen. Code, § 1239, subd. (b)) is pending before this court and because the present habeas corpus petition is "inextricably connected with that appeal, Ketchel must initially bring his petition to this court.

This procedural issue is academic because both parties apparently agree that the case is now properly before this court. In any event, we cannot accept the Attorney General's contention. Although the desirability of eliminating any friction between courts has led to the establishment of the rule that habeas corpus cannot be used to correct errors which may be resolved upon a pending appeal (*France* v. *Superior Court* (1927) 201 Cal. 122 [255 P. 815, 52 A.L.R. 869]; *In re Burns* (1947) 78 Cal. App.2d 294 [177 P.2d 649]), the superior court's order here does not in any way interfere with, nor is it "inexticably connected" with, this court's disposition of the subject matter of the appeal. Indeed, the superior court is in a better position than this court initially to pass upon the propriety of an order for a psychiatric examination and to prevent any abuse of its execution if such a contingency should arise.

such right effective, counsel is obviously entitled to the aid of such expert assistance as he may need . . . in preparing the defense." (*Id.* at p. 231.)

Our ruling in *Cornell* v. *Superior Court* (1959) 52 Cal.2d 99 [338 P.2d 447], also supports defendant's position. When an attorney there sought to compel the prison authorities to allow examination of his client by a hypnotist, the prosecution resisted on the basis that the hypnotist's testimony would be inadmissible at trial. Rejecting this argument, this court said that "[a]dmissibility of any evidence that may be secured during such an examination is not the question here presented. . . . Whether the evidence so secured would or would not be admissible is a false factor. Obviously, it is reasonably possible that evidence so secured, whether or not it is admissible, may put Cornell in possession of facts which, when followed up, would result in the discovery of admissible evidence. . . ." (*Id.* at p. 102.) Similarly, in the instant case the results of the psychiatric examination, even if not of direct use or "admissible" on appeal, may well assist counsel's overall strategy on both appeal and collateral remedies.

Moreover, the right to counsel on appeal clearly includes counsel's right to communicate personally with his client in order to develop and execute an overall strategy on appeal. We said in *In re Allison*: "In *In re Chessman* (1955) 44 Cal.2d 1, 9 [279 P.2d 24], we reaffirmed the rule that 'a prisoner is entitled to, and habeas corpus is available to enforce . . . [his] right, at reasonable times, to consult privately with his counsel *in preparation for trial* (*In re Rider* (1920) 50 Cal.App. 797, 799 [195 P. 965]; *In re Snyder* (1923) 62 Cal.App. 697, 699 [217 P. 777]; *In re Qualls* (1943) 58 Cal.App.2d 330, 331 [136 P.2d 341]).' (Italics added.) The right to consult includes the right, at reasonable times, to communicate with counsel by mail and, when necessary in the circumstances, by telegram. These rights attach not only while preparing for trial, but also during the pendency of an appeal." (*In re Allison, supra,* 66 Cal.2d 282, 286.) Since *Ochse* establishes defendant's right to assistance of experts chosen by counsel and *Allison* sanctions defendant's right to communicate with counsel at the appellate stage, defendant must surely enjoy the right to communicate at that time with the expert chosen by counsel. Obviously counsel for an appealing defendant who is at large on bail may communicate with him, and, if counsel thinks it advisable, arrange for a psychiatric examination; counsel for the

defendant incarcerated for a capital offense should not be denied the correlative opportunity to discharge his heavy burden of representation by arranging for such examination if he deems it necessary.

The Attorney General attempts to distinguish the cited cases by pointing out that, although the assistance of a psychiatrist can be useful in preparation for trial it could serve no purpose on appeal because the scope of inquiry on appeal is limited to the record. Since a psychiatric examination of Ketchel after the trial would not be part of the record, the Attorney General contends that it should not be permitted.

█ Indeed, an appellate court must restrict its review to that which appears on the trial record (*People* v. *Reeves* (1966) 64 Cal.2d 766, 776 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Arguello* (1964) 61 Cal.2d 210, 213 [37 Cal.Rptr. 601, 390 P.2d 377]) but such limitation does not negate the value of a psychiatric examination. It might be valuable to counsel in many situations. Counsel might desire to urge changes in the law of the penalty trial, but only to the extent that defendant would benefit thereby; the psychiatric examination, of course, would be useful in determining whether defendant could so benefit. Another possibility lies in the aid the psychiatric report might render counsel in determining whether defendant had been adequately represented by trial counsel in the face of his failure to raise a valid defense, such as that of diminished capacity (*People* v. *Wells* (1949) 33 Cal.2d 330 [202 P.2d 53]; *People* v. *Gorshen* (1959) 51 Cal.2d 716 [336 P.2d 492]).[3] The assistance of the informed psychiatrist could lead to the possible bases for collateral attack.[4] It

---

[3]The Attorney General attempts to resist this result by contending that issues such as incompetency of trial counsel are not ''in issue'' on appeal because ''there has been no allegation . . . that trial counsel's decision was the product of ineptitude.'' This argument, however, completely misses the crucial point that counsel desires a psychiatric examination of defendant to determine whether or not an issue should be raised. It would certainly be anomalous to require counsel to present an issue before this court in the absence of his opportunity, by methods including expert examination of his client, to decide whether it rests upon any basis in fact.

[4]*People* v. *Welch* (1964) 61 Cal. 2d 786 [40 Cal.Rptr. 238, 394 P.2d 926], affords an illustration of the use of a psychiatric record and interview of a defendant in the prison which defendant presented as a ground for the issuance of a writ of error *coram vobis*. Our opinion states: ''On December 3, 1963, Dr. Bramwell reviewed defendant's psychiatric record at San Quentin and interviewed defendant. On January 28, 1964, the present petition for the writ of error *coram vobis* was filed in this court with the above described document.'' (P. 793.)

certainly could assist counsel in the development of overall strategy. The right to such aid should hardly be conditioned upon a showing of its precise application or utility.[5]

 Recognizing the potential general usefulness of the psychiatric examination of defendant, we find no countervailing factors to support a refusal of the application. Both the trial court and petitioner's counsel repeatedly stated during the hearing that the examination would take place only ''in conformity with prison regulations.'' The Attorney General does not suggest that the examination will in any way interfere with prison safety or administration. The superior court has examined this very issue and found that the requested examination will not adversely affect the penal institution. If an examination of the defendant by his counsel does not endanger the safe administration of the facility, and surely this is not open to question, we do not see how an examination by a psychiatrist can do so. The fear of the Attorney General that the affirmation of the instant order might open the floodgates to harassment by groundless applications overlooks the issuing court's responsibility to grant such a request only if it were made in good faith and if it were to be executed under proper conditions.

Our disposition of this matter is certainly consistent with, if not compelled by, the recent case of *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396]. The full representation and advocacy there required by the United States Supreme Court is hardly compatible with the penitentiary's prevention of the consultation of the psychiatrist with defendant for the purpose of advising and aiding the attorney. We promote the underlying purpose of *Anders* in permitting counsel broad discretion in deciding how to investigate and develop all potentially available arguments. The

[5]Merely by way of analogy we point to the approach of the courts to the procurement of information through the use of discovery procedures. We note initially that discovery procedures are directed to the adverse party and that, here, counsel seeks access only to his own client for the examination. But even in discovery matters courts have been loath to predetermine the usefulness of the discoverable material. ''Since the production of at least some of the statements withheld was a right of the defense, it is not for us to speculate whether they could have been utilized effectively.'' (*Clancy* v. *United States* (1961) 365 U.S. 312, 316 [5 L.Ed. 2d 574, 577, 81 S.Ct. 645]; see also *Rosenberg* v. *United States* (1959) 360 U.S. 367, 371 [3 L.Ed.2d 1304, 1307, 79 S.Ct. 1231].) By the same token, this court should not attempt to prejudge the usefulness to counsel of a psychiatric examination.

principle applies with special force in a case involving the penalty of death.

The order is affirmed.

Traynor, C. J., Peters, J., Sullivan, J., and Peek, J.,* concurred.

BURKE, J.—I concur with the majority's conclusion that the superior court had jurisdiction to entertain Ketchel's petition. However, in my opinion the showing made by Ketchel in the superior court did not warrant the issuance of the order directing in part that the warden allow a psychiatric examination of Ketchel and the superior court therefore abused its discretion in issuing that order.

I cannot agree with the majority that defendant's right to effective representation on appeal includes counsel's right to employ a psychiatrist for the purpose of examining defendant. This holding fails to give adequate consideration to the proper scope of appellate review and creates serious problems regarding the necessity of furnishing to indigent appellants at public expense services by psychiatrists and experts in numerous other fields without any substantial showing of need for those services.[1] If the showing made by Ketchel entitled him to be examined by a psychiatrist employed by counsel as part of Ketchel's effective representation on appeal, the equal protection clause of the Fourteenth Amendment of the United States Constitution might entitle indigent appellants to such examinations at public expense upon similar showings, and if indigent appellants are entitled to such examinations they might likewise be entitled under the equal protection clause to the services of criminalists, ballistic experts, and experts in numerous other fields at public

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[1]Ketchel's attorney did not request the superior court for psychiatric fees. Previously, however, he had written this court (Supreme Court) setting forth substantially the same reason given the superior court for seeking examinations of Ketchel by a psychiatrist and a psychologist (which reason is set forth hereafter) and asking if the fees for the examinations would be allowed as a proper cost of preparation of the brief on appeal. The clerk of this court replied to defense counsel that ''The Justices considered your letter . . . and have requested me to inform you that the cost . . . incident to an examination of . . . Ketchel by a psychologist and by a psychiatrist is not an expense allowable to counsel at the conclusion of the appeal.''

expense again without any substantial showing of necessity for those services.

The habeas corpus petition, filed in Ketchel's behalf by his attorney, alleged that the attorney had been appointed to represent Ketchel on his pending automatic appeal and that in the attorney's opinion it was necessary to effectively represent Ketchel on that appeal that Ketchel be examined by Dr. Amini, a psychiatrist, and by a psychologist if **Dr.** Amini thought such examination necessary. The petition incorporated a letter from the attorney to the warden requesting that Dr. Amini be permitted to examine Ketchel and the warden's reply stating that, ''It has not been the policy of the Department of Corrections . . . to permit examinations of condemned men by staff other than specified in [the Penal Code.]'' The petition prayed that the court order the warden to permit examination of Ketchel by a psychiatrist and a psychologist.

In the superior court defense counsel, in addition to asserting that his statement as to the necessity for a psychiatric examination was by itself a sufficient showing to justify granting the requested relief, gave the following reason for seeking the examination: ''We intend to make the point on appeal, . . . that the trial court . . . erred in failing to require some evidence other than the facts of the offense in the course of the penalty proceeding. It will be our argument that the Legislature contemplated that the requirement of some testimony, some evidence as to the background, as to the man himself be elicited before the jury in order for it to adequately determine the question of penalty.''

The order sought was not justified by either defense counsel's conclusionary assertion that in his opinion a psychiatric examination was necessary to the effective representation of Ketchel on appeal nor by the specific reason advanced quoted above. A psychiatric examination of Ketchel would not be of assistance to him in connection with the proposed argument on appeal since matters disclosed by that examination could not be considered on appeal. It is an elementary rule that matters not presented to the trial court and hence not a proper part of the record on appeal cannot be considered on appeal. (*People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal. Rptr. 1, 426 P.2d 161] ; *People* v. *Reeves,* 64 Cal.2d 766, 776 [51 Cal.Rptr. 691, 415 P.2d 35] ; *People* v. *Arguello,* 61 Cal.2d 210, 213 [37 Cal.Rptr. 601, 390 P.2d 377] ; *People* v. *Agnew,*

16 Cal.2d 655, 660 [107 P.2d 601]; see Witkin, Cal. Criminal Procedure (1963) p. 666; see also rule 13 of California Rules of Court.)[2]

The majority, although purporting to recognize these rules, state: "[A] possibility lies in the aid the psychiatric report might render counsel in determining whether defendant had been adequately represented by trial counsel in the face of his failure to raise a valid defense, such as that of diminished capacity [citations][3]," and footnote 3 reads in part, ". . . It would certainly be anomalous to require counsel to present an issue before this court [apparently on appeal] in the absence of his opportunity, by methods including expert examination of his client, to decide whether it rests upon any basis in fact." Such a requirement is not anomalous, however, because, as we have seen, this court must decide the issue solely from the record on appeal.

It is further suggested by the majority that "Counsel might desire to urge changes in the law of the penalty trial, but only to the extent that defendant would benefit thereby; the psychiatric examination, of course, would be useful in determining whether defendant could so benefit." However, any changes in the law of the penalty trial would benefit defendant on appeal only if those changes necessitated a reversal of the judgment as to penalty. Whether that judgment should be reversed must be decided solely from the record on appeal and the law. Irrespective of the results of the psychiatric examination, defendant would benefit from changes in the law of the penalty trial necessitating a retrial of that issue since a different trier of fact would determine the penalty, other evidence might be introduced, and conceivably a different result might obtain.

The majority also state, "Our disposition of this matter is certainly consistent with, if not compelled by, the recent case of *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396]." However, (1) *Anders* does not involve the question presented here; (2) to the extent that *Anders* has any bearing whatever on the duties of counsel on appeal, it negates what is contended for here by restricting counsel "to *anything in the record* that might arguably support the appeal." (Italics added.)

---

[2]Rule 13 provides: "Every appellant shall file an opening brief, . . . The opening brief shall contain a statement of the case, . . . The statement shall be . . . *confined to matters in the record on appeal.*" (Italics added.)

. .

It bears emphasis that this is not a case where defense counsel informed the superior court that he had agreed to represent Ketchel on a collateral attack on the judgment if a ground for such an attack could be discovered, or where defense counsel made a showing that due to mental illness Ketchel was unable to cooperate on appeal, and the questions presented by such cases are not before us.

Orderly procedures have long been established for obtaining relief on the ground of newly discovered evidence. An application in the trial court for a new trial on the basis of such evidence may be granted under appropriate circumstances. (Pen. Code, § 1181, subd. 8; *People* v. *Williams,* 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].) A judgment may also be set aside in a proceeding such as *coram vobis,* where such relief is warranted. (E.g. *People* v. *Welch,* 61 Cal.2d 786, 788 et seq. [40 Cal.Rptr. 238, 394 P.2d 926]) Executive clemency is another alternative available to a defendant. (Cal. Const., art. VI, § 8; Pen. Code, § 4800 et seq.) Under the circumstances I do not think that the fact the present case is one involving the death penalty warrants our ignoring settled rules of appellate review.

I would reverse the order.

McComb, J., concurred.