[S.F. No. 24309. Feb. 8, 1982.]

MAURICE JOHN KEENAN, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent.

COUNSEL

M. Gerald Schwartzbach and John J. Brosnahan for Petitioner.

George Agnost, City Attorney, and G. Leanette Flentroy, Deputy City Attorney, for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Ann K. Jensen and Morris Lenk, Deputy Attorneys General, as Amici Curiae.

OPINION

**MOSK, J.**—Maurice Keenan, an indigent defendant charged with a capital offense, seeks a writ of mandate to compel respondent superior court to grant his motion for public funds to pay for the services of a second attorney to assist in the preparation of his defense. He relies on

Penal Code section 987.9 as authority for this request.[1] For the reasons that follow, we hold that the trial court abused its discretion in denying appointment of additional counsel but that the appointment should be made under section 987, subdivision (b), and that section 987.9's provisions for confidentiality are applicable by analogy to such motions.

Defendant was arraigned in October 1979 and charged with murder and six other felony counts.[2] Special circumstances were also alleged, thus subjecting him to a possible death sentence. (§ 190.2, subds. (a)(17)(i), (a)(17)(vii).) M. Gerald Schwartzbach was appointed to represent defendant on October 7, 1980.[3] Schwartzbach had some familiarity with the case as a result of his representation of Linda Keenan, who was accused of being an accessory after the fact to the offenses charged against defendant.[4] Two days after Schwartzbach's appointment, trial was set for November 24, 1980, despite his plea that he could not be ready before January 1981.

Shortly after the trial date was set, defendant made a motion at an *in camera* hearing that funds be allocated pursuant to section 987.9 to

---

[1]Section 987.9 provides: "In the trial of a capital case the indigent defendant, through his counsel, may request the trial court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense. The application for such funds shall be by affidavit and shall specify that the funds are reasonably necessary for the preparation or presentation of the defense. The fact that such an application has been made shall be confidential and the contents of the application shall be confidential. Upon receipt of such application, a judge of the court, other than the trial judge presiding over the capital case in question, shall rule on the reasonableness of the request and shall disburse an appropriate amount of money to defendant's attorney. The ruling on the reasonableness of the request shall be made at an *in camera* hearing. In making such a ruling, the court shall be guided by the need to provide a complete and full defense for the defendant.

"At the termination of the proceedings, the attorney shall furnish to the court a complete accounting of all moneys received and disbursed pursuant to this section."

Unless otherwise specified, all statutory references hereinafter are to the Penal Code.

[2]The information charged the following seven felonies: count I, murder (§ 187); count II, burglary (§ 459); counts III and V, attempted robbery (§ 644); count IV, robbery (§ 211); count VI, possession of a sawed-off shotgun (§ 12020); count VII, possession of a gun by a felon (§ 12021).

[3]Defendant had been assigned private counsel at arraignment after the public defender declared a conflict of interest (§ 987.2). Subsequently a conflict arose between defendant and his original counsel; thereupon Mr. Schwartzbach was appointed.

[4]Defendant and Linda Keenan specifically waived any conflict of interest that might arise as a result of Schwartzbach's joint representation of them. Linda Keenan's trial has since been severed from that of defendant.

provide expert and investigatory help in the preparation and presentation of the defense.[5] Specifically, funds were requested for a private investigator, a serology expert, psychiatric and neurological testing, and jury selection experts. The court granted $16,000 for these purposes.[6] Funds were also requested for a second attorney on the ground that the case presented complex factual and legal issues, but this request was denied. Counsel then unsuccessfully sought a continuance of the trial date. A renewed motion for funds for a second attorney was subsequently denied. Defendant seeks a writ of mandate to compel the trial court to allocate such funds.

■    The right to counsel of a person charged with a crime is guaranteed by both the federal and state Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) To meet the constitutional standard the defendant must be provided effective legal assistance in the preparation and trial of the case. (*Powell* v. *Alabama* (1932) 287 U.S. 45, 71 [77 L.Ed. 158, 171-172, 53 S.Ct. 55, 84 A.L.R. 527]; *McMann* v. *Richardson* (1970) 397 U.S. 759, 771 [25 L.Ed.2d 763, 773-774, 90 S.Ct. 1441].) ■    If a criminal defendant is unable to employ private counsel the court must appoint an attorney to represent him. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) ■    The right to effective counsel also includes the right to ancillary services necessary in the preparation of a defense. (*In re Ketchel* (1968) 68 Cal.2d 397 [66 Cal.Rptr. 881, 438 P.2d 625]; *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330 [154 Cal.Rptr. 132]; *Mason* v. *State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1351.)

In *People* v. *Jackson* (1980) 28 Cal.3d 264 [168 Cal.Rptr. 603, 618 P.2d 149], we had occasion to consider whether an indigent defendant in a capital case had an absolute statutory or constitutional right to be represented by two appointed attorneys. Defendant in that case relied on section 1095, which provides that "If the offense charged is punishable with death, two counsel on each side may argue the cause. In any other case the court may, in its discretion, restrict the argument to one counsel on each side."

---

[5]Section 987.9 (fn. 1, *ante*) provides that both the request for such funds and the contents of the application shall remain confidential. Accordingly, when we first considered this matter we directed the Court of Appeal to maintain the confidentiality of defendant's request and determined that the People should not be a real party in interest. Defendant has since waived his right to confidentiality for the limited purpose of conducting oral argument before this court and publication of this opinion. The remainder of the record, however, remains confidential.

[6]Another $7,000 was later granted, making the total allocated for investigation and experts $23,000.

We held in *Jackson* that section 1095 "does not purport to authorize or mandate the *appointment* of additional counsel at public expense, but only to permit the *argument* of the case by two counsel." (28 Cal.3d at pp. 285-286.) We went on to hold there was no merit to the claim that equal protection principles compelled appointment of a second attorney for an indigent defendant in a capital case simply because an affluent defendant exercising his right under section 1095 was entitled to have two attorneys argue his case. We reasoned that precise equality is not required, and concluded that "equal protection demands are satisfied by permitting the trial court, in its discretion, to appoint additional counsel at public expense if the circumstances in a particular case appear to require such an appointment." (*Id.* at p. 287.)[7]

■ In *Jackson* we refused to find that the trial court had abused its discretion in this regard. Noting that the defendant had failed to present any specific, compelling reasons for appointment of a second attorney, we concluded that "neither the facts nor the legal issues ... appear[ed] to have been so complex as to require the assistance of additional counsel as a matter of law." (28 Cal.3d at p. 288.) Nevertheless, *Jackson* stands for the proposition that in appropriate circumstances an indigent defendant in a capital case should have a second court-appointed attorney.

As authority for the trial court to exercise this discretion, *Jackson* cited section 987.9. As we have seen, under the terms of that section the defense may make a confidential application for funds for "investigators, experts and others" reasonably necessary for the preparation of the defense of an indigent defendant in a capital case. The section does not expressly refer to appointment of an additional attorney, though its applicability for that purpose was assumed in *Jackson.* Here, however, the Attorney General, appearing as amicus curiae, contests that applicability, pointing out that funds to implement section 987.9 must be wholly provided by the state (Rev. & Tax. Code, §§ 2207, 2231), whereas the state reimburses counties for no more than 10 percent of the cost of appointed counsel (§ 987.6).

---

[7]The Ninth Circuit reached a similar conclusion in *Mason* v. *Arizona* (9th Cir. 1974) *supra,* 504 F.2d 1345. In *Mason* the defendant was represented by appointed counsel after the public defender's office declared a conflict of interest. The defendant requested funds for a private investigator, arguing that he would have had access to one had he been represented by the public defender. The court held that equal protection standards were met because the trial court had discretionary power to appoint an investigator. The court stressed that the public defender's office operated under a restricted budget and thus also was forced to make choices about how to allocate resources.

The wording of section 987.9, together with its legislative history, lead us to conclude that it was intended to supplement preexisting provisions for employment of defense counsel at public expense by making provision for services ancillary to those of counsel.[8]

Section 987, subdivision (b), provides that "[i]n a capital case, ... [i]f the defendant is unable to employ counsel, the court shall assign counsel to defend him." That section, together with other provisions for court-appointed counsel (see §§ 987.2-987.8), provides ample authority for appointment of an additional attorney shown to be necessary for defense of a capital case. ■ To avoid undue disclosure of defense strategy, defendant is entitled to the application, by analogy, of section 987.9's provisions for confidentiality to the making and hearing of the motion for such appointment. (See *Puett* v. *Superior Court* (1979) 96 Cal.App.3d 936, 940, fn. 2 [158 Cal.Rptr. 266]; *People* v. *Faxel, supra,* 91 Cal.App.3d 327, 330, fn. 1.) ■ The appointment is not an absolute right, however, and the decision as to whether an additional attorney should be appointed remains within the sound discretion of the trial court.

That discretion, of course, must be "guided by legal principles and policies appropriate to the particular matter at issue." (*People* v. *Russel* (1968) 69 Cal.2d 187, 195 [70 Cal.Rptr. 210, 443 P.2d 794]; *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) The United States Supreme Court has expressly recognized that death is a different kind of punishment from any other, both in terms of severity and finality. Because life is at stake, courts must be particularly sensitive to insure that every safeguard designed to guarantee defendant a full defense be observed. (*Gardner* v. *Florida* (1977) 430 U.S. 349, 357 [51 L.Ed.2d 393,

---

[8]Section 987.9 was enacted as chapter 1048 of the 1977 Statutes. The Legislative Counsel's digest of the chapter states: "Existing law provides for the assignment of counsel in capital cases and for the employment of counsel at public expense if the defendant is unable to employ counsel. [¶] This bill would provide for payment of investigators, experts, and others for the preparation or presentation of the defense of indigent defendants in capital cases. [¶] The bill would appropriate $1,000,000 from the General Fund to the State Controller for allocation and disbursement to local agencies. [¶] This bill would take effect immediately as an urgency statute, but would be operative only if SB 155 is chaptered."

Senate Bill No. 155, referred to in chapter 1048, was enacted at the same legislative session and became chapter 316, providing for the death penalty (former §§ 190-190.5; 190.6).

401-402, 97 S.Ct. 1197]; *Gregg* v. *Georgia* (1976) 428 U.S. 153, 187 [49 L.Ed.2d 859, 882-883, 96 S.Ct. 2909].) Thus, in striking a balance between the interests of the state and those of the defendant, it is generally necessary to protect more carefully the rights of a defendant who is charged with a capital crime. (*United States* v. *See* (9th Cir. 1974) 505 F.2d 845, 853, fn. 13; *Powell* v. *Alabama, supra*, 287 U.S. at p. 71 [77 L.Ed at pp. 171-172].)

The Legislature has also recognized that a defendant in a capital case may need certain protections not granted to one charged with an offense carrying a lesser penalty.[9] Section 987.9 demonstrates this concern by its broad language authorizing funds for "the preparation or presentation of the defense" and its direction that in ruling on a defendant's request the court must be guided by "the need to provide a complete and full defense."[10]

Another factor the trial court must weigh in exercising its discretion is the importance this court has attached to pretrial preparation in providing a criminal defendant effective legal assistance. Part of counsel's responsibility to a client is to become thoroughly familiar with the factual and legal circumstances of the case prior to trial. (*People* v. *Frierson* (1979) 25 Cal.3d 142, 163 [158 Cal.Rptr. 281, 599 P.2d 587]; *People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; see also, 1 ABA Standards for Crim. Justice (2d ed. 1980) The Defense Function, p. 4-42.) "Representation of an accused murderer is a mammoth responsibility." (*In re Hall* (1981) 30 Cal.3d 408, 434 [179 Cal.Rptr. 223, 637 P.2d 690].) In a murder prosecution that is factually and legally complex, the task of effectively preparing for trial places a substantial burden on the defense attorney.

---

[9]Examples of the Legislature's different treatment of capital cases include sections 1095, 1070, and 1018. Section 1095, as discussed earlier, permits argument by two counsel for both sides in a capital case. Section 1070 allows 26 peremptory challenges by the defense or prosecution in a case in which the defendant faces the death penalty or life imprisonment, while fewer challenges are allowed for less serious offenses. Section 1018 prohibits a plea of guilty when the death penalty may be imposed unless defense counsel has agreed to the plea. In applying section 1018, we noted the Legislature's "careful distinction between capital and noncapital cases" and emphasized that the statute was intended as a "further independent safeguard against erroneous imposition of a death sentence." (*People* v. *Chadd* (1981) 28 Cal.3d 739, 747, 750 [170 Cal.Rptr. 798, 621 P.2d 837].)

[10]Similar services may be provided to a noncapital defendant pursuant to section 987.2, which allows appointed counsel reimbursement of necessary expenses. (*Puett* v. *Superior Court, supra*, 96 Cal.App.3d 936, 939; *People* v. *Faxel, supra*, 91 Cal.App.3d 327, 330.)

This is particularly true of a capital case, since the possibility of a death penalty raises additional factual and legal issues. This burden may be lightened by employment of investigators and experts, but the ultimate responsibility for coordinating the investigation and assimilating the results must remain with an attorney sensitive to the potential legal issues involved. Because many of the tasks involved in preparation for trial cannot be delegated to nonattorneys, the court cannot assume that authorization of funds for an investigator makes appointment of a second attorney unnecessary. Rather, in assessing the need for another attorney the court must focus on the complexity of the issues involved, keeping in mind the critical role that pretrial preparation may play in the eventual outcome of the prosecution.

■ In the instant case, defendant presented the trial court with specific facts and argument of the type we found lacking in *Jackson*, to support his motion for a second attorney. The declarations accompanying the motion stressed the factual and legal complexity of the case. Counsel stated that it would be necessary to interview approximately 120 witnesses in order to develop and prepare potentially meritorious defenses, and that he anticipated extensive scientific and psychiatric testimony would be produced at trial, all of which would require extraordinary preparation by him. In addition, defendant was charged in five other criminal cases pending before the superior court, and counsel had been informed that the prosecution intended to offer at some phase of the trial evidence related to all those cases.[11] Counsel pointed out that this would necessitate his familiarity with the facts and legal issues involved in those charges as well as the immediate homicide case.

The difficulty of preparation was compounded, counsel argued, by the inherent problem present in any capital case of simultaneous preparation for a guilt and a penalty phase of the trial. He noted that the issues and evidence to be developed in order to support mitigation of the possible death sentence were substantially different from those likely to be considered during the guilt phase. Counsel acknowledged that some of this task would be undertaken by trained investigators, but contended that supervision and assimilation of the investigative results were of necessity a responsibility for an attorney to perform.

Counsel also informed the court that he intended to make numerous pretrial motions as part of the defense effort and anticipated that re-

---

[11]Subsequent to the *in camera* hearing counsel discovered four more criminal incidents evidence of which may be introduced at trial.

view of some of these motions might be necessary. He asserted that only the assistance of another qualified attorney would be useful in preparation and argument of these motions.[12]

Counsel's final contention was that his request for funds for a second attorney should have been considered in light of the early date set for trial. As we have seen, trial was set to begin seven weeks after counsel's appointment despite his protest that he could not adequately prepare the defense in that time.

In denying the motion the court did not question the factual assertions made by defendant but declared instead that a criminal attorney, working alone, should be capable of adequately defending a capital case and that Schwartzbach could "ably and competently perform that task." The court also stated that Schwartzbach had ample time to become familiar with the issues in the case as a result of his earlier involvement as counsel for Linda Keenan and thus had no need for another attorney to aid in trial preparations.

These reasons are inadequate as a matter of law to justify denial of defendant's motion. The demands of preparing for a murder case when the defendant faces the death penalty cannot be compared to the much more limited task of defending against a charge of being an accessory after the fact. While it is true that Schwartzbach may have acquired some knowledge of the general facts and issues involved in this case, it is unreasonable to expect that he could have performed the careful pretrial investigation and preparation we have deemed essential to the representation of a capital defendant. Because the crime with which Linda Keenan was charged involved circumstances occurring only after the actual homicide, it was unlikely that counsel would necessarily be familiar with the specific factual or legal defenses available to this defendant. Furthermore, counsel was faced with the necessity of investigating the other crimes with which defendant had been charged, as well as preparing for the penalty phase of the trial. These tasks were different both in nature and scope from the matters involved in the defense of Linda Keenan.

As indicated above, the court declared that a criminal attorney should be capable of defending a capital case without the assistance of

---

[12]After the motion for a second attorney was denied, counsel made two additional pretrial motions in the trial court and sought review when both motions failed.

a second lawyer. But this view fails to take into account the showing made by Schwartzbach of the reasons why a second attorney is justified under the facts of this particular case, e.g., the complexity of the issues, the other criminal acts alleged, the large number of witnesses, the complicated scientific and psychiatric testimony, and the extensive pretrial motions, as to some of which review would be sought in the event of adverse rulings.[13] Thus the court abused its discretion in failing to address the specific reasons advanced by Schwartzbach in support of the motion.

Moreover, section 987.9, though not providing for appointment of counsel, reflects a legislative intent that the court be guided by a capital defendant's need for a "complete and full defense." That intent, together with the constitutionally mandated distinction between death and other penalties, requires that the trial court apply a higher standard than bare adequacy to a defendant's request for additional counsel. If it appears that a second attorney may lend important assistance in preparing for trial or presenting the case, the court should rule favorably on the request. Indeed, in general, under a showing of genuine need, and certainly in circumstances as pervasive as those offered by the attorney in this case, a presumption arises that a second attorney is required. The trial court should have found that the presumption was not rebutted here.

Let a peremptory writ of mandate issue directing respondent court to appoint a second attorney for defendant.

Bird, C. J., Newman, J., Kaus, J., Broussard, J., and Tobriner, J.,* concurred.

**RICHARDSON, J.**—I respectfully dissent. In my view, the trial court did not abuse its broad discretion in denying petitioner the services of a *second* court-appointed attorney at public expense.

---

[13]Respondent denigrates defendant's problem by declaring that the practice of the prosecutor in San Francisco is to have only one attorney handle the case. That point overlooks the large staff of attorneys for the People readily available both for trial assistance and for the review process after denial of pretrial motions; defendant must pursue such review while preparing for trial, whereas the prosecutor has the assistance of the Attorney General's office for this purpose.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

In *People* v. *Jackson* (1980) 28 Cal.3d 264, 287 [168 Cal.Rptr. 603, 618 P.2d 149], we explained that the trial court in a capital case has discretion "to appoint additional counsel at public expense if the circumstances in a particular case appear to require such an appointment." We indicated, however, that the defendant is required to make a "'substantial showing' that, among other things, 'the cause of justice will thereby be served.' [Citations.]" (*Ibid.*) Finally, in upholding the trial court's denial of additional counsel in *Jackson*, we noted that "the trial court had full opportunity to observe counsel in the course of extensive argument on pretrial matters prior to its ruling ... and accordingly was well positioned to evaluate counsel's ability." (Pp. 287-288.)

The majority now discards *Jackson's* requirement that defendant make a "substantial showing" of his need for a second attorney, substituting in its place a "presumption" of such need arising whenever a "genuine need" is established. (*Ante*, p. 434.) No authorities are cited to support the majority's creation of such a presumption.

In the present case, as in *Jackson*, the trial court had an ample opportunity for determining that a second court-appointed attorney was unnecessary to assure petitioner a full and complete defense. Justice Rouse in his opinion for the Court of Appeal in this case observed, "we have thoroughly reviewed the sealed documents and transcripts bearing upon petitioner's request for the employment of a second attorney at public expense, and we have also conducted our own *in camera* hearing. Defendant does not contend, nor was there any indication to us, that counsel presently assigned to the case is not fully qualified and capable of conducting a fair and adequate defense to the charges, both in the substantive, and, if necessary, the penalty, phase of trial. Many of the tasks for which defendant seeks help from an additional lawyer involve pretrial preparation and are essentially investigative in nature. These, we submit, can be more appropriately carried out by qualified investigative personnel and other experts acting under the direction and supervision of assigned counsel. Funds have already been provided to defense counsel for this purpose. It is our determination that respondent superior court did not abuse its discretion in denying petitioner's request for funds for the employment of a second attorney and that said court's order of denial was entirely proper and must be upheld."

I fully concur in Justice Rouse's careful analysis. In addition to the services of his present competent counsel, I further observe that, follow-

ing the *in camera* hearing in November 1980, *the trial court granted petitioner's request for a criminalist, an investigator, a jury selection service, and psychiatric, psychological and neurological testing*, and I have no reason to believe that the trial court would deny additional funds for other services if they prove necessary to petitioner's defense. The trial court can be trusted to continue its sensitive watch over these proceedings. If under *Jackson*, the court becomes convinced that a second counsel is needed one can be appointed. Our intervention is not required.

In addition to my disagreement with the majority's reasoning, I disagree with its result as well. The majority unconditionally directs the trial court "to appoint a second attorney for defendant" (*ante*, p. 434). At best it should remand the cause for reconsideration of petitioner's motion in light of the majority opinion. The record discloses that *more than a year has passed* since petitioner's motion was first denied. Surely, *some* trial preparation must have been completed *during the course of a year*. Petitioner may no longer require the services of a second attorney. The hearings previously conducted should be renewed to ascertain petitioner's *present* need for additional legal assistance, pursuant to the wholly new guidelines which are now judicially created by the majority.

Because I conclude that defendant is being fairly and generously treated by the trial court system, I would sustain its action and deny the peremptory writ.

A petition for a rehearing was denied June 3, 1982. Richardson, J., was of the opinion that the petition should be granted.