[No. B080938. Second Dist., Div. Seven. Feb. 24, 1995.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v.
COMMISSION ON STATE MANDATES, Defendant and Respondent;
GRAY DAVIS, as Controller, etc., et al., Real Parties in Interest and
Respondents.

**COUNSEL**

De Witt W. Clinton, County Counsel, and Stephen R. Morris, Principal Deputy County Counsel, for Plaintiff and Appellant.

Gary D. Hori for Defendant and Respondent.

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic and Shelleyanne W. L. Chang, Deputy Attorneys General, for Real Parties in Interest and Respondents.

OPINION

WOODS (Fred), J.—

I.

FACTUAL AND PROCEDURAL SUMMARY

A. *Procedural.*

On December 22, 1992, appellant filed its first amended verified petition for writ of mandate. In its petition, appellant sought a peremptory writ of mandate compelling respondent Commission on State Mandates (the Commission) to vacate its determination that Penal Code section[1] 987.9 did not constitute a state mandate, for which the state was obligated to reimburse appellant pursuant to article XIII B, section 6, of the California Constitution. The petition also named as real parties in interest, State Controller Gray Davis, the Department of Finance, and Director of Finance Thomas W. Hayes.

Appellant also sought an order from the lower court, determining that section 987.9 constituted a state mandate and compelling respondents to process appellant's claims.

On or about May 18, 1993, the State of California, Gray Davis, the Department of Finance, and Thomas W. Hayes filed an answer to the first amended verified petition for writ of mandate.

On or about May 19, 1993, the Commission filed its answer to the first amended verified petition for writ of mandate.

On June 30, 1993, appellant filed a motion for peremptory writ of mandate pursuant to Code of Civil Procedure section 1094.5.

On or about August 6, 1993, the Commission filed its opposition.

---

[1]Unless otherwise noted, all statutory references are to the Penal Code.

On or about August 13, 1993, the State of California, Gray Davis, the Department of Finance, and Thomas W. Hayes filed their opposition.

On October 8, 1993, after hearing oral arguments, the lower court denied the petition for review, finding that the Sixth Amendment of the United States Constitution guaranteed an indigent criminal defendant the right to publicly funded counsel and the right to ancillary services and that the Commission, as a quasi-judicial body, properly determined within its jurisdiction, that section 987.9 was not a state mandate.

Judgment denying the petition for writ of mandate was entered on November 4, 1993.

A notice of entry of judgment was filed on December 7, 1993.

On December 7, 1993, appellant filed its notice of appeal.

B. *Facts.*

Appellant asserts section 987.9 is a state mandate, constituting a new program or higher level of service, thereby requiring reimbursement by respondents pursuant to article XIII B, section 6, of the California Constitution.[2]

Section 987.9 was added to the Penal Code on September 24, 1977, by chapter 1048, section 1, pages 3178-3179, of the Statutes of 1977.[3] Included

---

[2]Article XIII B, section 6, of the California Constitution provides, in pertinent part: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service . . . ."

[3]Section 987.9 provides, in pertinent part, as follows: "In the trial of a capital case or a case under subdivision (a) of Section 190.05 the indigent defendant, through the defendant's counsel, may request the court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense. The application for funds shall be by affidavit and shall specify that the funds are reasonably necessary for the preparation or presentation of the defense. The fact that an application has been made shall be confidential and the contents of the application shall be confidential. Upon receipt of an application, a judge of the court, other than the trial judge presiding over the case in question, shall rule on the reasonableness of the request and shall disburse an appropriate amount of money to the defendant's attorney. The ruling on the reasonableness of the request shall be made at an in camera hearing. In making the ruling, the court shall be guided by the need to provide a complete and full defense for the defendant."

in the law was an appropriation in the amount of $1 million for "disbursement to local agencies pursuant to Section 2231 of the Revenue and Taxation Code to reimburse such agencies for costs incurred by them pursuant to this act."[4]

From 1977 to 1982, the first five years after the enactment of section 987.9, the Legislature enacted an appropriation to reimburse counties for their costs under that section in each annual budget act along with the following language, "for reimbursement, in accordance with subdivision (a) of section 2231 of the Revenue and Taxation Code."

In the 1983 Budget Act (Stats. 1983, ch. 323), while an appropriation was made, the appropriation no longer contained a reference to the Revenue and Taxation Code, but instead, specified that the funds were appropriated for "contributions to counties."

In subsequent years, the Budget Act language was simply, "For local assistance, Assistance to Counties for Defense of Indigents."

In the 1989-1990 Budget Act, the California Legislature enacted a $13 million appropriation to reimburse counties for their costs under section 987.9. The 1989-1990 Budget Act, with the $13 million appropriation, was signed into law by the Governor. In the 1990-1991 Budget Act, however, no appropriation was made to reimburse counties for their section 987.9 costs. Because of the lack of appropriation in the Budget Act, the Legislature introduced and passed Assembly Bill No. 2813, which would have appropriated the sum of $13 million to reimburse counties for their section 987.9 costs. Assembly Bill No. 2813, however, was vetoed by the Governor, and consequently no appropriation was made to counties to reimburse them for their costs in the 1990-1991 Budget Act.

Upon notification by the State Controller's Office that it would not issue claiming instructions and honor requests for payment of section 987.9 costs for fiscal year 1990-1991, appellant filed its test claim with the Commission

---

[4]Former Revenue and Taxation Code section 2231, subdivision (a), required the state to reimburse local agencies for all costs mandated by the state, as defined in Revenue and Taxation Code section 2207.

Former Revenue and Taxation Code section 2207 provided, in pertinent part: " 'Costs mandated by the state' means any increased costs which a local agency is required to incur as a result of the following:

"(a) Any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program. . . ."

on December 26, 1991, seeking reimbursement for its costs associated with section 987.9 as a state-mandated cost.[5]

After hearing appellant's test claim, the Commission determined that section 987.9 did not constitute a reimbursable state mandate. The Commission found that an indigent defendant's rights, as guaranteed by the provisions of the Sixth Amendment, were obligatory and that the appellant's obligation to provide services to indigent defendants was not mandated by the state, but rather by the United States Constitution and various court rulings. The Commission concluded that section 987.9 did not impose a new program or higher level of service in an existing program within the meaning of Government Code section 17514 and article XIII B, section 6, of the California Constitution.

Appellant thereafter filed its petition for writ of mandate.

II.

DISCUSSION

A. *The Appropriate Standard of Review of the Lower Court's Decision Is Substantial Evidence.*

Appellant argues the independent judgment standard of review governs this court's review of the lower court's decision. Appellant is mistaken. The independent judgment test applies when the order or decision substantially affects a fundamental vested right. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595 P.2d 579].) Appellant has no fundamental vested right here and the appropriate standard of review is the substantial evidence test.

Government Code section 17559 governs the state mandates process, and provides: "A claimant or the state may commence a proceeding in accordance with the provisions of section 1094.5 of the Code of Civil Procedure to set aside a decision of the commission on the ground that the commission's decision *is not supported by substantial evidence.* The court may order the commission to hold another hearing regarding the claim and may direct the commission on what basis the claim is to receive a rehearing." (Italics added.)

The substantial evidence test is that standard of judicial review in which the trial court reviews the evidence adduced at the administrative

---

[5]A "test claim" is defined as "the first claim filed with the commission alleging costs mandated by the state as defined in Sections 17514 and 17551 of the Government Code in a particular statute or executive order." (Cal. Code Regs., tit. 2, § 1183.)

hearing to determine whether there is substantial evidence in support of the agency's finding in light of the whole record. "Substantial evidence" is evidence of ponderable legal significance, which is " 'reasonable in nature, credible and of solid value.' " (*Pennel* v. *Pond Union School Dist.* (1973) 29 Cal.App.3d 832, 837, fn. 2 [105 Cal.Rptr. 817]; see also *Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873 [197 Cal.Rptr. 925].)

 Where the proper scope of review in the trial court was whether the administrative decision was supported by substantial evidence on the whole record, the function of the reviewing court on appeal from the judgment is the same as that of the trial court, that is, to review the administrative decision to determine whether it is supported by substantial evidence on the whole record. (*Steve P. Rados, Inc.* v. *California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 595 [152 Cal.Rptr. 510].)

B. *An Indigent Defendant's Right to Ancillary Services Is Guaranteed by the Sixth Amendment of the United States Constitution.*

 Appellant asserts section 987.9 is a state-mandated program for which it is entitled to be reimbursed. To the contrary, the requirements of section 987.9 are not state mandated.

 A state is required by the United States Constitution to provide counsel for indigent defendants. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) The right to counsel includes the right to the use of any experts that will assist counsel in preparing a defense. (*In re Ketchel* (1968) 68 Cal.2d 397, 398 [66 Cal.Rptr. 881, 438 P.2d 625]; *Torres* v. *Municipal Court* (1975) 50 Cal.App.3d 778 [123 Cal.Rptr. 553]; *Mason* v. *State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1351.)

"It follows, therefore, that if expert or investigative help is necessary to the defense pending the preliminary hearing, due process requires the state to provide the service to indigents." (*Anderson* v. *Justice Court* (1979) 99 Cal.App.3d 398, 401-402 [160 Cal.Rptr. 274].)

The California Supreme Court, in *People* v. *Frierson* (1979) 25 Cal.3d 142, 162 [158 Cal.Rptr. 281, 599 P.2d 587], held that the right to competent counsel derives not exclusively from the due process clause of the Fourteenth Amendment to the United States Constitution, but also from the constitutional right to the assistance of counsel. The court concluded that the failure of counsel to take reasonable investigative measures to prepare the apparently sole meritorious defense used at trial, resulted in the presentation

to the jury of an incomplete defense, and thus, deprived the defendant of his right to effective trial counsel. (*Id.*, at p. 164.)

Finally, in *People* v. *Worthy* (1980) 109 Cal.App.3d 514 [167 Cal.Rptr. 402], the court found that, although there was no specific authority in California for a trial court to appoint experts at county expense for an indigent defendant represented by private counsel, the appointment of experts was constitutionally compelled in a proper case as a fundamental part of the constitutional right of an accused to be represented by counsel.

Thus, even in the absence of section 987.9, appellant and other counties would be responsible for providing ancillary services under the constitutional guarantees of due process under the Fourteenth Amendment and the Sixth Amendment right to counsel.

In *Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307 [204 Cal.Rptr. 165, 682 P.2d 360], an indigent defendant challenged a superior court order denying him ancillary defense services. The court traced the judicially imposed requirement that the right to counsel includes the right to reasonably necessary ancillary services: *Keenan* v. *Superior Court* (1982) 31 Cal.3d 424, 428 [180 Cal.Rptr. 489, 640 P.2d 108] ["The right to effective counsel also includes the right to ancillary services necessary in the preparation of a defense."]; *In re Ketchel, supra,* 68 Cal.2d 397, 399-400 [" 'A fundamental part of the constitutional right of an accused to be represented by counsel is that his attorney . . . is obviously entitled to the aid of such expert assistance as he may need . . . in preparing the defense.' "]; *Puett* v. *Superior Court* (1979) 96 Cal.App.3d 936, 938-939 [158 Cal.Rptr. 266] ["[T]he right to counsel encompasses the right to effective counsel which in turn encompasses the right of an indigent and his appointed counsel to have the services of an investigator."] *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330 [154 Cal.Rptr. 132] ["The due process right of effective counsel includes the right to ancillary services necessary in the preparation of a defense."]; *Mason* v. *State of Arizona, supra,* 504 F.2d 1345, 1351 ["[T]he effective assistance of counsel guarantee of the Due Process Clause requires, when necessary, the allowance of investigative expenses or appointment of investigative assistance for indigent defendants . . . ."]

The court in *Corenevsky* thus recognized that section 987.9 merely codified these constitutional guarantees.[6]

---

[6]While appellant correctly points out that the court in *Corenevsky* referred to "matters within the compass of section 987.9" as "*state* funded" (*Corenevsky* v. *Superior Court, supra,*

## C. *Section 987.9 Merely Implements the Guarantees Provided by the Sixth Amendment of the United States Constitution.*

California Constitution, article XIII B, section 6, provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates:

"(a) Legislative mandates requested by the local agency affected;

"(b) Legislation defining a new crime or changing an existing definition of a crime; or

"(c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975."

██ The California Supreme Court has defined what is a "new program" or "increased cost," stating that the drafters and electorate had "in mind the commonly understood meanings of the term—programs that carry out the governmental function of providing services to the public, or laws which, to implement state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (*County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 56 [233 Cal.Rptr. 38, 729 P.2d 202].)

The courts have concluded that no state mandate exists if the requirements or provisions of a state statute are, nevertheless, required by federal law.

"When the federal government imposes costs on local agencies those costs are not mandated by the state and thus would not require a state subvention. Instead, such costs are exempt from local agencies' taxing and spending limitations. This should be true even though the state has adopted an implementing statute or regulation pursuant to the federal mandate so long as the state had no 'true choice' in the manner of implementation of the federal mandate." (*Hayes* v. *Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1593 [15 Cal.Rptr.2d 547]; see also *City of Sacramento* v. *State of California* (1990) 50 Cal.3d 51, 76 [266 Cal.Rptr. 139, 785 P.2d

---

36 Cal.3d at p. 314, original italics), this was not a ruling that such funding was required, but merely a recognition of the fact that, in 1984, when the court's opinion was issued, such funding had been through the Legislature's annual appropriation.

522]; *County of Fresno* v. *Lehman* (1991) 229 Cal.App.3d 340, 349 [280 Cal.Rptr. 310].)[7]

D. *The State Has Not Shifted the Costs of a State-administered Program to the Counties.*

1. *Lucia Mar Unified School Dist. v. Honig (1988) 44 Cal.3d 830 [244 Cal.Rptr. 677, 750 P.2d 318] is inapposite.*

■ Appellant argues that the Commission's decision not to reimburse the counties for their programs under section 987.9 constitutes an unlawful shifting of the financial responsibility of this program from the state to the counties, in violation of the California Supreme Court's holding in *Lucia Mar*.

To the contrary, *Lucia Mar* is factually distinguishable from the case presented by appellant. In *Lucia Mar*, the handicapped school program in issue had been operated and administered by the State of California for many years. The court found primary responsibility rested with the state and that the transfer of financial responsibility from the state through state tax revenues to school districts through school district tax and assessment revenues in the school district treasuries imposed a new program on school districts. (44 Cal.3d at p. 835.)

Upon the enactment of a statute requiring local school districts to contribute to the cost of educating their handicapped students at the state schools, the court determined it was a "new program" within the meaning of article XIII B, section 6, of the California Constitution. (*Lucia Mar Unified School Dist.* v. *Honig, supra,* 44 Cal.3d at p. 836 ["The intent of [section 6 of article XIII B] would plainly be violated if the state could, *while retaining administrative control of programs* it has supported with state tax money, simply shift the cost of the programs to local government . . . ." (Italics added.)].)

In contrast, the program here has never been operated or administered by the State of California. The counties have always borne legal and financial responsibility for implementing the procedures under section 987.9. The state merely reimbursed counties for specific expenses incurred by the counties in their operation of a program for which they had a primary legal and financial responsibility. There has been no shift of costs from the state to the counties and *Lucia Mar* is, thus, inapposite.

---

[7]The argument that section 987.9 is a "new program" because it requires in camera hearings, confidentiality and a second trial judge is disingenuous. The additions of those procedural requirements add nothing to the cost of the statute but are, in fact, designed to curtail costs and to protect defendants and confidentiality rights. They do not involve additional expenses. The financial impact, if any, of these requirements is merely incidental.

*Lucia Mar* is further distinguishable because the court in *Lucia Mar* never addressed the issue presented here. That is, whether the statute in question constituted a state mandate within the meaning of article XIII B, section 6, of the California Constitution. While the court in *Lucia Mar* found that the statute created a new program, it did not reach a determination of whether the school district was mandated by the state to pay these costs within the meaning of article XIII B, section 6, of the California Constitution, and remanded the matter to the lower court to resolve this issue. (*Lucia Mar Unified School Dist.* v. *Honig, supra,* 44 Cal.3d at p. 837.)

> 2. *Assuming, arguendo, section 987.9 constitutes a "new program" or "increased costs," it is not a state mandate.*

■ Assuming, arguendo, the provisions of section 987.9 were determined to be a new program, it does not necessarily lead to the conclusion that the program is a state mandate under California Constitution, article XIII B, section 6.

If a local entity or school district has alternatives under the statute other than the mandated contribution, it does not constitute a state mandate. (*Lucia Mar Unified School Dist.* v. *Honig, supra,* 44 Cal.3d at pp. 836-837.) In fact, the requirements under section 987.9 are not mandated by the state, but rather by principles of constitutional law and a superior court's finding of reasonableness and necessity under section 987.9.

E. *The Legislature's Initial Finding of a State Mandate Was Not Binding on the Lower Court.*

> 1. *The Commission has exclusive authority to determine whether a state mandate exists.*

■ Appellant argues that the Legislature's initial appropriation of $1 million to reimburse the counties, containing the language "pursuant to Section 2231 of the Revenue and Taxation Code," is a final and unchallengeable determination that section 987.9 constitutes a state mandate and that, in light of the Legislature's initial finding in Assembly Bill No. 2813, the Commission erred in finding otherwise. Appellant argues that the Commission was bound by the Legislature's determination and that it had no discretion to determine whether a state mandate existed.

Appellant, however, is mistaken. The findings of the Legislature as to whether section 987.9 constitutes a state mandate are irrelevant. The Legislature enacted comprehensive administrative procedures for resolution of claims arising out of article XIII B, section 6. (Gov. Code, § 17500 et seq.)

The Legislature did so because the absence of a uniform procedure had resulted in inconsistent rulings on the existence of state mandates, unnecessary litigation, reimbursement delays, and apparently, resultant uncertainties in accommodating reimbursement requirements in the budgetary process. (*Kinlaw* v. *State of California* (1991) 54 Cal.3d 326, 331 [285 Cal.Rptr. 66, 814 P.2d 1308].)

"It is apparent from the comprehensive nature of this legislative scheme, and from the Legislature's expressed intent, that the exclusive remedy for a claimed violation of section 6 lies in these procedures. The statutes create an administrative forum for resolution of state mandate claims, and establishes procedures which exist for the express purpose of avoiding multiple proceedings, judicial and administrative, addressing the same claim that a reimbursable state mandate has been created. . . . [¶] . . . *In short, the Legislature has created what is clearly intended to be a comprehensive and exclusive procedure by which to implement and enforce section 6.*" (*Kinlaw* v. *State of California, supra,* 54 Cal.3d at p. 333, italics added.)

Thus, the statutory scheme contemplates that the Commission, as a quasi-judicial body, has the sole and exclusive authority to adjudicate whether a state mandate exists. Thus, any legislative findings are irrelevant to the issue of whether a state mandate exists, and the Commission properly determined that no state mandate existed.

> 2. *Beginning in 1983, the Legislature no longer considered section 987.9 a state mandate.*

Assuming, arguendo, the Legislature's findings are entitled to some weight, the Legislature, itself, ceased to regard the provisions of section 987.9 as a state mandate in 1983. For the first five years after section 987.9 was enacted, the appropriation in the annual budget acts would be made in accordance with former Revenue and Taxation Code section 2231. The budget acts would contain the following language: "For reimbursement, in accordance with subdivision (a) of section 2231 of the Revenue and Taxation Code."

In the 1983 Budget Act, however, the funds were appropriated for "contributions to counties." There is no mention of the Revenue and Taxation provisions. In every succeeding year, the Budget Act language was simply "For local assistance, Assistance to Counties for Defense of Indigents."

The absence of any reference to the Revenue and Taxation Code sections indicates that the Legislature ceased to regard section 987.9 as a state mandate. Although the Legislature ceased to regard section 987.9 as a state mandate, it nevertheless, continued to appropriate moneys for reimbursement to counties as a means of voluntarily providing local assistance.

Thus, the Legislature ceased making appropriations because it recognized that it no longer had a legal obligation to do so under the Revenue and Taxation Code or article XIII B, section 6, of the California Constitution.

F. *Appellant's Request for Reimbursement Unlawfully Infringes on the Legislature's Authority of Appropriation.*

■ Appellant argues that the Legislature's initial determination to enact an appropriation to reimburse counties for their costs under section 987.9 obligated it to enact an appropriation every year in perpetuity to reimburse the counties and that this determination binds future legislatures from refusing to appropriate moneys for section 987.9 costs.

Appellant's theory is directly contrary to law and would necessarily unlawfully infringe upon the Legislature's constitutional authority to enact appropriations. The appropriation of tax revenues is a legislative power granted by article IV, section 1, of the California Constitution, and the authority to appropriate moneys resides with the Legislature under the doctrine of separation of governmental powers. (*California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 234 [108 Cal.Rptr. 251].) Thus, the Legislature has the authority and the discretion to determine appropriations. (*Mandel* v. *Myers* (1981) 29 Cal.3d 531, 539 [174 Cal.Rptr. 841, 629 P.2d 935].)

If the Legislature, in its wisdom and discretion, has decided not to appropriate monies to reimburse counties for their costs under Penal Code section 987.9, it is well within the exercise of its constitutional authority. It is not obligated to enact the same appropriations year after year, as appellant claims.

## III.

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs of appeal.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 1995.