[Crim. No. 35582. Second Dist., Div. Four. Aug. 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES CLENTON WORTHY, Defendant and Appellant.

COUNSEL

Ron W. Alcorn, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and John A. Saurenman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WOODS, J.—Defendant has appealed from his conviction for second degree murder, in violation of Penal Code section 187. The jury found true the allegation that he used a firearm in the commission of the offense. Following a trial on the issue of sanity, the jury found that defendant was legally sane at the time of the commission of the offense. Defendant was sentenced to state prison for a total of six years.

He seeks reversal of his conviction for the following reasons:

"1. The trial court erred in denying his pretrial motion for appointment of a medical expert.

2. The court abused its discretion in denying his motion for discovery concerning the victim's propensity for violence.

3. The court erred in denying his motion to consolidate the guilt and sanity phases of the trial.

4. The trial court improperly questioned witnesses on behalf of the prosecution.

5. The court improperly limited questions concerning the bases of expert psychiatric testimony.

I

Appellant's first contention raises an issue of first impression in California: May a trial court appoint experts at county expense for an indigent defendant represented by private counsel? Although no statutory authority exists in California for such appointment, we have concluded that the Constitution compels such appointment in a proper case and that the trial court has inherent power to do so.

Prior to trial, appellant's attorney filed a motion for appointment of confidential expert witnesses under Evidence Code sections 730 and 952. His declaration stated that defendant was indigent and without resources to hire the services of an expert. He sought appointment of a psychiatrist, a psychologist and an internist-pharmacologist. The motion was accompanied by an affidavit of indigency signed by appellant. That affidavit stated that, although he had agreed to pay his attorney for professional services, to date he had paid him nothing, and was unemployed and unemployable due to severe alcoholism.

Psychologists and psychiatrists did testify on defendant's behalf at trial, having been appointed following defendant's entry of a plea of not guilty by reason of insanity. Appellant challenges only the denial of his request for appointment of an internist-pharmacologist. At the hearing on the motion for appointment, the court concluded that it had no authority to appoint publicly funded experts for a defendant represented by private counsel. Defense counsel informed the court that he was serving pro bono, because appellant was destitute. The court concluded that, nonetheless, appellant was not entitled to defense services unless represented by appointed counsel or the public defender.

Appellant now contends that he is entitled under federal constitutional guarantees of right to counsel, due process of law, and equal protection to expert assistance. We agree that upon a proper showing an indigent defendant is so entitled, regardless of the absence of statutory authority.[1]

Penal Code section 987.2 authorizes the payment of attorney's fees to counsel appointed to represent an indigent defendant. That section also authorizes payment of the attorney's expenses. Counsel here was not appointed and he does not contend that that section authorizes appointment of experts in this case. Evidence Code section 730 authorizes the court to appoint experts to testify in the case, for the court, the plaintiff, or the defendant. Such court-appointed expert can be called upon to testify for either party or the court, and no privilege attaches to the fruits of his investigation.

Appellant in this case sought the appointment of a confidential medical expert to testify on his behalf only and at his discretion. He concedes that neither of the above statutes will accomplish this purpose.

It is now well established in California that "[a] fundamental part of the constitutional right of an accused to be represented by counsel is that his attorney must be afforded reasonable opportunity to prepare for trial. [Citations.] To make that right effective, counsel is obviously entitled to the aid of such expert assistance as he may need in determining the sanity of his client and in preparing the defense." (*In re Ochse* (1951) 38 Cal.2d 230, 231 [238 P.2d 561].) This principle has also been recognized in numerous federal court decisions. For example, in *Mason* v. *State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1351, the court stated that Supreme Court decisions mandate that effective assistance of counsel "...requires, when necessary, the allowance of investigative expenses or appointment of investigative assistance for indigent defendants in order to insure effective preparation of their defense by their attorneys. [Citations.]"

Additionally, it has been recognized in California that both due process and equal protection require that a defendant's right to fair trial be unhampered by his indigency.

---

[1]See the excellent discussion at 24 Hastings L. J. 647 (1972) Margolin & Wagner, *The Indigent Criminal Defendant and Defense Services: A Search for Constitutional Standards.*

"We start with the basic premise that there can be no justice where the type of trial that a person has depends upon the financial means of such person. [Citation.] By statute the federal courts are required to appoint expert witnesses for the defense if the witness is necessary to an adequate defense. [Citations.] This state does not have a similar provision. However, we note that the federal statute was passed as a result of equal protection problems that had arisen. [Citations.]" (*Torres* v. *Municipal Court* (1975) 50 Cal.App.3d 778, 784-785 [123 Cal.Rptr. 553].)

The test of entitlement to county assistance in defense preparation must be indigency. A test based upon the status of defense counsel would be constitutionally infirm. If a criminal defendant requires the services of investigators or scientific or medical experts to assist him in preparation of his defense, that assistance must be provided. Whether it is paid for by the government or by the defendant depends solely on the defendant's economic status.

In *Anderson* v. *Justice Court* (1979) 99 Cal.App.3d 398 [160 Cal.Rptr. 274], appellant sought funded expert assistance under Penal Code section 987.9, in a capital case. In that case, petitioner filed a declaration with the lower court stating that he had no money to pay his privately retained attorney who was being paid by his family and friends. The respondent contended that defendant was not indigent since he was represented by retained counsel. The court concluded that: "[T]he test of indigency for the purpose of funding investigators and experts is financial means to secure these services." (*Id.,* at p. 403.) The *Anderson* matter was remanded for a determination of the extent to which the wealth of defendant's family and friends would affect his indigent status.

We concur in the concept that if a defendant is able to pay counsel, by whatever means, his indigency has not been established.

In the instant case, defense counsel stated that he was serving without compensation, and respondent does not challenge defendant's declaration that he is indigent. Having established his indigent status, defendant is constitutionally entitled to those defense services for which he demonstrates a need. (See, e.g., *Puett* v. *Superior Court* (1979) 96 Cal.App.3d 936 [158 Cal.Rptr. 266]; *People* v. *Faxel* (1979) 91 Cal. App.3d 327 [154 Cal.Rptr. 132]; *Torres* v. *Municipal Court, supra,* 50 Cal.App.3d at pp. 784-785.)

Although the Legislature has not provided for the precise situation presented here (undoubtedly not having anticipated it), the court has inherent power to guarantee to criminal defendants a fair trial. (See *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055].) The duty to ensure that a criminal defendant be afforded a fair trial necessarily includes the authority to provide such services as are required to obtain that end.

We conclude, therefore, that, upon a proper showing of necessity, the trial court must provide to an indigent defendant expert defense services, without regard to whether his counsel is appointed or selected pro bono counsel.

But within the rule just stated is its limitation: the burden is on the defendant to make a showing of need, before the court is required to appoint an expert. The court explained in *Puett* v. *Superior Court, supra*, 96 Cal.App.3d at page 939: "[I]t is only *necessary* investigative services to which an indigent defendant is entitled, and a motion for the appointment of an investigator at public expense must be supported by showing that the investigative services are reasonably necessary. [Citations.]" (See also *Mason* v. *State of Arizona, supra*, 504 F.2d at p. 1352; *People* v. *Faxel, supra*, 91 Cal.App.3d at p. 330; *People* v. *Gorg* (1955) 45 Cal.2d 776, 780 [291 P.2d 469]; 18 U.S.C. § 3006(A) (e)(1) and (2).)

In *Faxel*, appellant argued that to require a showing of need resulted in a denial of equal protection, because no such showing was required of a wealthy person. The court responded: "The test is not whether the indigent defendant is entitled to waste money in unnecessary expenditures as might an affluent and profligate defendant, but whether the indigent defendant is placed on a general level of equality with nonindigent defendants. [Citations.] The requirement of the showing of necessity specifying the general area of inquiry does not place the indigent defendant on a constitutionally impermissible plane differing from that of the defendant who can afford to finance the ancillary defense services. [Citation.]" (*People* v. *Faxel, supra*, 91 Cal.App.3d at p. 331.)

We agree that the requirement of a demonstration of need for the services is a reasonable limitation on a defendant's right to defense experts, and turn now to a determination of whether such a showing was made in the instant case.

Defendant's motion for appointment of the internist-pharmacologist states that "it is essential to the defense" that such expert be appointed to assist counsel in preparing for trial and to testify as an expert witness. No other explanation, justification, or articulation of need is contained in any of the documents filed in support of the motion for appointment of the expert. At the hearing on the motion, no evidence was offered concerning the reason such expert was sought.[2] The need for the expert requested in this case is not readily apparent absent some explanation by defense counsel. Defendant was charged with having shot his wife to death. Before the services of an internist-pharmacologist can be found necessary and relevant in such a case, some explanation is required. "In the nature of things it may be difficult, in advance of trial, for counsel representing an indigent defendant to demonstrate an undoubted need for such funds. However, he can at least advise the court as to the general lines of inquiry he wishes to pursue, being as specific as possible." (*Puett* v. *Superior Court, supra,* 96 Cal.App.3d at p. 939.)

In *People* v. *Hurley* (1979.) 95 Cal.App.3d 895 [157 Cal.Rptr. 364], appellant, through appointed counsel, moved for the appointment of an eyewitness identification expert. In his supporting papers, he merely indicated that the expert was "crucial evidence" in the case and was required to examine the prosecutor's evidence and perhaps to testify. The *Hurley* court said at page 899: "We are of the opinion that such a weak showing in the trial court in this case is very similar to that made in the trial court in *Collins* [v. *Superior Court* (1977) 74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273]] where the court noted: '...Petitioners made no showing whatsoever, other than the bare assertion, that an expert was needed to evaluate information communicated from petitioners. The court could reasonably conclude no expert was needed for this purpose.' [Citation.]"

It may be that in the instant case no demonstration of need was made at the hearing on the motion because court and counsel devoted all of their attention to one issue: whether defendant was entitled to such assistance at all. Under such circumstances, we would be reluctant to conclude that an inadequate showing was made to justify the appointment of the expert, particularly where the court made no such express

---

[2]To the extent that making a proper showing could result in the revelation by a criminal defendant of anticipated defense strategy, the holding of an ex parte *in camera* hearing would supply the court with the needed information and not violate the restriction on prosecutorial discovery. (See *People* v. *Faxel, supra,* 91 Cal.App.3d at p. 330, fn. 1., and cases cited therein.)

finding. However, under the unusual facts of this case no harm to defendant is demonstrated by the court's failure to appoint the requested expert. In his opening brief, appellant states: "Mr. Worthy's defense substantially depended on the relationship between his prolonged use of alcohol and his physical and mental condition. In trying to develop a diminished capacity and insanity defense, counsel attempted to establish possible organic brain damage due to alcohol consumption." Appellant then describes testimony offered by psychiatrists indicating that defendant suffered from organic brain syndrome and argues: "The trial court should have permitted appointment of a neurologist or other medical expert, as requested by defense counsel, capable of conducting EEG or brain scan tests that would have provided concrete evidence on the issue of brain damage."

Appellant's allegation that the trial court should have appointed a neurologist is a product of pure hindsight. A neurologist was not requested. The allegation that some "other medical expert" should have been appointed could be said to include an internist-pharmacologist, but it stretches credulity to argue that the internist-pharmacologist was requested for the purpose of determining whether defendant suffered from an organic brain syndrome.

Even if we conclude that the court should have encouraged defense counsel to state some justification for the requested appointment, the court's failure to do so did not result in harm to the defendant. No pretrial request for a neurologist or other expert qualified to perform a brain scan or EEG was ever made to, or denied by, the trial court. The defendant having demonstrated no prejudice to him as a result of the court's denial of the requested expert, the error is harmless. (See *People v. Gorg, supra*, 45 Cal.2d 776, 780; *Smith v. Baldi* (1953) 344 U.S. 561, 568 [97 L.Ed. 549, 556, 73 S.Ct. 391, 437]; *Mason v. State of Arizona, supra*, 504 F.2d at p. 1355.)

## II

■ Appellant contends that the court abused its discretion in denying his pretrial motion for discovery of information concerning the victim's propensity for violence. This contention suffers from two infirmities. First, an inadequate showing was made at the time of the motion to demonstrate the relevancy of the information sought. Second, the record of the trial establishes that, even had the discovery motion

been granted, the information acquired would not have been relevant to the defense.

Appellant testified that he did not remember having shot and murdered his wife, although the evidence overwhelmingly established that he did so. He relied on a defense of diminished capacity resulting from the prolonged use of alcohol.

In his pretrial motion, appellant sought discovery of 21 enumerated items. Included in that motion was a request for police and/or sheriff's reports regarding 10911 Standard, Lynwood, California, from June 1972 to June 1978. That address was the residence of the victim, where she had lived for many years before and during her brief marriage to appellant. At the hearing on the motion for discovery, the court requested an explanation of the reason for the foregoing request and its relevancy. Defense counsel stated: "At this time I cannot say exactly the relevancy of it to this case other than there were some guns removed from the residence immediately prior to the date of this occurrence, and that is in the police reports that I have. I wanted to determine whether or not the victim in this case had any propensity for violence and had attacked prior male occupants of the residence."

The prosecutor argued that searching for such information would place an undue burden on law enforcement and that he did not think they could come up with the information requested. The court concluded that defendant had made an inadequate showing as to the relevancy of the information sought and denied the request.

We turn first to the question of the sufficiency of the showing made. An accused's right to discovery is based on the proposition that he is entitled to a fair trial and an intelligent defense. However, "[a] defendant's motion to discover is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305].)

Here, appellant's motion specified the material sought but provided little explanation of the need for it. In *Engstrom* v. *Superior Court* (1971) 20 Cal.App.3d 240 [97 Cal.Rptr. 484], defendant, charged with murder, sought discovery of the victim's rap sheet to show "'. . . any act or attempted act of violent or assaultive conduct' to prove that the victims initiated the attack." (*Id.*, at p. 243.) The court stated: "[W]e

conclude that where a claim of self-defense is offered, and the alleged victim of an offense is claimed to have been the aggressor, information concerning arrests for specific acts of aggression by the alleged victim must be produced if available to the prosecutor." (*Id.*, at p. 245.) The application of the foregoing rule to the instant facts demonstrates the weakness in appellant's position. No claim was made that a defense of self-defense was intended here.[3] In addition, this was not a request for information concerning arrests for specific acts of aggression, but rather all police and sheriff responses to the victim's address for any purpose.

Finally, it is not clear from the record that the information sought was available to the prosecutor. The prosecutor expressed doubt that law enforcement officials could search out records based on an address only. Therefore, we conclude that the trial court did not abuse its discretion in denying the requested item of discovery. Its relevancy was doubtful and the request appears overbroad.

And as noted early in the discussion of this issue, the irrelevance of the material sought was demonstrated during trial. During direct examination of the defendant, defense counsel was questioning him concerning an episode in which the victim had allegedly pulled a gun on her brother. The prosecutor objected to the relevancy of the line of questioning, and, during discussion at the bench, the court stated: "I don't see the relevancy at this time. . . . Let me explain one thing to you: you are trying to put on here and I keep talking about foundation— you're trying to put on self-defense." Defense counsel responded: "No, no."

No jury instruction on self-defense was requested by the defense nor given by the court. The transcript of the trial makes it abundantly clear that appellant was relying on a defense of diminished capacity and not self-defense. Thus, the court's order denying discovery, facially correct when made, is supported by the record of the trial.

---

[3]As noted in footnote 2, we recognize that a balance must be struck between the requirement that the defendant make a plausible justification for requested discovery and the limitations on prosecutorial discovery. It is conceivable that if too much is required of a defendant, he could be forced to reveal anticipated defense strategy. However, in the face of such danger, the court could hold an ex parte *in camera* hearing to establish the relevancy of requested information. (See *Pacific Lighting Leasing Co. v. Superior Court* (1976) 60 Cal.App.3d 552, 559-568 [131 Cal.Rptr. 559].)

## III

■ Appellant next contends that the court erred in denying his motion, made prior to commencement of trial, that the guilt and sanity phases of his trial be consolidated. On appeal, he contends that Penal Code section 1026, providing for a bifurcated trial, was enacted for the protection of criminal defendants, and thus may be waived by them. Appellant misapprehends the purpose and effect of Penal Code section 1026. That section provides, in pertinent part, that when a defendant pleads not guilty and not guilty by reason of insanity, he shall first be tried on the issue of his guilt of the offense charged, and, if found guilty, shall then be tried on the issue of his sanity at the time of the commission of the offense. In 1927, when that statute was enacted, the Commission for the Reform of Criminal Procedure explained that the statute was enacted to prevent abuses of the criminal justice system by defendants who had, under the single-trial method, been able to confuse juries with the introduction of evidence on the issue of their sanity.[4] "'The legislative purpose, as expressed in the amendments [Pen. Code, §§ 1016, 1020 and 1026] was to simplify the *issues* before the jury,...'" (*People* v. *Wells* (1949) 33 Cal.2d 330, 352 [202 P.2d 53], overruled on other grounds, *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324 [149 Cal.Rptr. 265, 583 P.2d 1308].)

Although frequently challenged in the years following its enactment, Penal Code section 1026 has consistently been found constitutional by the California courts. (See, e.g., *People* v. *Troche* (1928) 206 Cal. 35 [273 P. 767]; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 893 [256 P.2d 911].)

Appellant here argues that he was damaged by the denial of his motion for a unified proceeding because in this case, after a determination of guilt, the jury was deadlocked on the issue of sanity. A mistrial was declared and a new jury impaneled, which found him sane at the time of the offense. He states: "There is an inherent unfairness when the same jury is not allowed to consider all the facts on both issues at the same proceeding." Penal Code section 1026 expressly provides that the issue of sanity shall be tried either before the same jury or before a new jury in the discretion of the court. In *People* v. *Corona* (1978) 80 Cal. App.3d 684, 717 [145 Cal.Rptr. 894], the court noted: "It is also sig-

---

[4]California Commission for the Reform of Criminal Procedure, Report 16-17 (1927).

nificant that the question of legal sanity is not necessarily determined by the same jury that heard the evidence on the defendant's guilt. Quite to the contrary, it is well recognized that the trial court has wide discretion to determine whether the issue of legal sanity be adjudicated by the same or a different jury. (*People* v. *Rupp* (1953) 41 Cal.2d 371....)"

The trial court committed no error in denying appellant's motion for a unified trial on the issues of guilt and sanity.

### IV

█ Appellant argues that the trial judge was guilty of judicial misconduct in that he conducted cross-examination of a defense expert witness, Dr. Rose. The transcript reflects that on numerous occasions the trial judge participated in examination or cross-examination of defense witnesses.

It is true that a trial judge must not become an advocate for either party under the guise of examining witnesses or indicate the court's convictions in the case to the jury. Appellant's contentions in this regard cannot be reached on appeal as no objection was made to any of the questions asked of witnesses by the trial judge, nor did defendant make a motion to strike the questions or the answers. "It is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred. [Citations.]" (*People* v. *Corrigan* (1957) 48 Cal.2d 551, 556 [310 P.2d 953]; see also *People* v. *Terry* (1970) 2 Cal.3d 362, 398 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Ott* (1978) 84 Cal.App.3d 118, 131 [148 Cal.Rptr. 479].)

Appellant not having objected to any of the questioning at trial, he cannot cite it as error for the first time on appeal.

### V

█ Appellant finally contends that the trial court erred in limiting the examination of defense psychiatrists concerning the bases for their opinions. This contention is without merit. Our examination of the record reflects that each of the defense expert witnesses offered testimony concerning the medical and factual bases for his opinion concerning defendant's mental capacity. In many of the instances cited by appellant, although objections to questions were sustained on the basis of lack of

foundation, once a proper foundation had been laid, the evidence was admitted.

The record does not reflect that any defense expert was improperly limited in the nature or extent of testimony offered on behalf of defendant.

The judgment is affirmed.

Kingsley, Acting P. J., and Wenke, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.