Filed 6/30/22  P. v. Mendoza CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>AMERICO PONCE MENDOZA,<br><br>        Defendant and Appellant. | A161765<br><br>(Solano County<br>Super. Ct. No. FCR353733) |

With an infant in the backseat of his car, Americo Ponce Mendoza led law enforcement officers on a 33-mile pursuit, committing numerous traffic violations and driving at speeds of up to 109 miles per hour.  At the conclusion of a short trial conducted during the COVID-19 pandemic, a jury convicted Mendoza of evading a peace officer in willful disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a)).  The trial court sentenced Mendoza to a three-year prison term.  Mendoza appeals, raising several claims of error.  We affirm the conviction, vacate the sentence, and remand for resentencing.

**BACKGROUND**

In September 2020, the prosecution charged Mendoza with one count of evading a peace officer in willful disregard for the safety of persons or property.  Mendoza's trial began in late November.  At that time, while still in the early months of the COVID-19 pandemic, the "public health

1

emergency" had killed more than 200,000 Americans. (*People v. Edwards* (2022) 76 Cal.App.5th 523, 526 (*Edwards*); *Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1114–1116.) No vaccine was widely available "to protect against the spread of COVID-19 and the best scientific evidence demonstrated the wearing of face masks was effective at reducing the spread of the virus and the risk of infection in indoor settings." (*People v. Lopez* (2022) 75 Cal.App.5th 227, 233 (*Lopez*).)

A mask order was in effect during Mendoza's trial. The order required each person — including jurors and witnesses — to wear a mask covering "both the mouth and nose . . . at all times when in an enclosed space in any of the . . . Solano County courthouses open to members of the public." (Super. Ct. Solano County, Misc. Order No. M-15-2020 (June 18, 2020).) The order described the public health emergency, highlighted the "important governmental interest in protecting the health and welfare of all who enter" county courthouses, and posited that requiring "the wearing of face masks in enclosed public spaces" would protect the public from COVID-19. The trial court also imposed social distancing measures that, as relevant here, limited the amount of seating in the jury box and in the gallery. (See *Hernandez-Valenzuela v. Superior Court, supra*, 75 Cal.App.5th at pp. 1117–1118.) Throughout Mendoza's five-day trial, Solano County was in the "purple" tier, which represented the highest risk for COVID-19 transmission. (See *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 68.)

At trial, the prosecution established Mendoza failed to yield when law enforcement officers attempted to conduct a traffic stop. Mendoza led numerous officers on a 33-mile pursuit through several cities, including Vacaville, American Canyon, and Napa, during which he drove up to 109 miles per hour, ran three red lights, made an illegal U-turn, and changed

2

lanes without signaling. The pursuit ended only after Mendoza drove his vehicle over a spike strip placed on the roadway by the Napa Police Department. In the back seat of Mendoza's car was an infant in a car seat.

The jury convicted Mendoza of the charge. In January 2021, the trial court sentenced Mendoza to the upper term of three years in prison.

## DISCUSSION

Mendoza raises several arguments, which we address below.

### I.

At the outset, Mendoza challenges the trial court's denial of his request to appoint a second attorney to assist with jury selection.

Shortly before trial, Mendoza's counsel indicated the public defender's office had assigned a second attorney to assist at trial. The trial court expressed concern that adding an additional attorney to the courtroom would interfere with social distancing requirements, thereby increasing the jurors' risk of contracting COVID-19; the court also questioned the need to appoint a second attorney given the uncomplicated nature of the case. Thereafter, counsel for Mendoza filed a motion for appointment of a second attorney pursuant to *Keenan v. Superior Court* (1982) 31 Cal.3d 424 (*Keenan*), where our high court held a trial court has discretion to appoint a second attorney to assist in the defense of a capital case. Mendoza's counsel asserted the social distancing measures imposed by the trial court — seating masked jurors throughout the courtroom, rather than exclusively in the jury box — would hinder counsel's ability to select a jury. A second attorney would help ensure jurors were "paying attention" and hearing "what [was] being said." Appointing a second attorney was, according to counsel for Mendoza, "necessary" to uphold Mendoza's constitutional rights.

3

The trial court denied the motion for appointment of a second attorney. It acknowledged that under *Keenan*, the failure to appoint a second attorney in a capital prosecution may constitute an abuse of discretion but noted "[t]his case is not a capital case," nor "particularly factually or legally complex." Defense counsel's argument, the court observed, was directed more "towards logistics of the trial being conducted during the pandemic than . . . the legal hurdles that might be faced . . . based on the nature of the case factually and legally." The court reminded Mendoza's counsel of its inherent authority to control the proceedings, and its obligation to protect the health and safety of everyone in the courtroom during the "very peak of the pandemic." It offered to give counsel additional time during jury selection, or to continue the trial if counsel for Mendoza could not "effectively perform [his] duties" in light of the pandemic-related restrictions. The court stated a second defense attorney could watch jury selection from the courtroom gallery. It explained, "because this is a public courtroom, in order to still allow the public to enter, one seat will be open," but "as jurors are excused, those seats will increase. When the trial begins, there will be more seats available." Finally, the court noted its ruling did not preclude co-counsel — or "any member of the public" — from observing trial. Counsel for Mendoza did not request a continuance.

As stated above, a trial court has discretion, in a capital case, to appoint a second defense attorney at public expense where necessary to provide the defendant with effective representation. (*People v. Woodruff* (2018) 5 Cal.5th 697, 734.) The "factual and legal complexity" of capital cases, the "substantial burden" associated with preparing such cases for trial, and the "severity and finality" of the potential penalty may militate in favor of appointing a second attorney. (*Keenan, supra*, 31 Cal.3d at pp. 430–432,

4

434.)  In a capital case, the trial court "must be particularly sensitive to insure that every safeguard designed to guarantee defendant a full defense be observed." (*Id.* at p. 430.)  Thus, a defendant charged with a capital crime "may need certain protections not granted to one charged with an offense carrying a lesser penalty." (*Id.* at pp. 430–431; Pen. Code, § 987, subd. (d) [authorizing appointment of a second attorney in a capital case "upon a written request of the first attorney appointed"], undesignated statutory references are to this code.)

A capital defendant has the burden to make " 'a specific factual showing of "genuine need" for the appointment of second counsel.' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1180, abrogated on another point as stated in *People v. Rangel* (2016) 62 Cal.4th 1192.)  " 'An "abstract assertion" regarding the burden on defense counsel "cannot be used as a substitute for a showing of genuine need." ' " (*People v. Woodruff*, *supra*, 5 Cal.5th at p. 737.)  In assessing need, the trial "court must focus on the complexity of the issues involved, keeping in mind the critical role that pretrial preparation may play in the eventual outcome of the prosecution." (*Keenan*, *supra*, 31 Cal.3d at p. 432.)  A criminal defendant's right to a second attorney in a capital case is statutory — not constitutional — and the trial court's ruling on whether to appoint second counsel is reviewed for abuse of discretion. Under this deferential standard, reversal is appropriate only when the court has " ' "exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice." ' " (*People v. Hajek and Vo*, at p. 1180.)

Mendoza acknowledges this is not a capital case, but he insists *Keenan* compelled the trial court to appoint a second attorney.  We are not persuaded. In *Keenan*, counsel for a capital defendant sought appointment of a second

5

attorney. Counsel averred a second attorney was necessary to conduct more than 100 witness interviews, to evaluate complicated scientific and psychiatric testimony, and to prepare for guilt and penalty phases of trial. Our high court held these reasons justified appointment of a second attorney. (*Keenan, supra*, 31 Cal.3d at p. 432.)

Here, by contrast, Mendoza was charged with a single felony offense carrying a maximum sentence of three years in prison; the jury was empaneled in approximately one full court day; and only four witnesses testified at the five-day trial. In closing argument, counsel for Mendoza acknowledged the case was "simple." Indeed, the only disputed issues — neither of which was complex — were whether Mendoza drove with the requisite intent and whether he committed three or more traffic violations. (*People v. Carrasco* (2014) 59 Cal.4th 924, 955–956 [no abuse of discretion in denying request for *Keenan* counsel where factual circumstances and legal issues "were not complex"].) And unlike *Keenan*, Mendoza's counsel did not seek appointment of a second attorney for "simultaneous preparation" of guilt and penalty phases of trial, but rather for the limited task of observing jurors during jury selection. (*Keenan, supra*, 31 Cal.3d at p. 432.) As this case bears no resemblance to *Keenan*, we decline Mendoza's invitation to apply it here. (See *People v. Garcia* (2000) 78 Cal.App.4th 1422, 1429.)

In sum, we conclude the trial court's determination that Mendoza failed to justify the appointment of a second attorney to assist with jury selection was not an abuse of discretion, particularly in light of the countervailing public health concerns presented by the pandemic. (*People v. Carrasco, supra*, 59 Cal.4th at p. 956; *Edwards, supra*, 76 Cal.App.5th at p. 527.) But even if we assume for the sake of argument the denial of Mendoza's request for a second attorney was an abuse of discretion, "any error was harmless."

6

(*People v. Doolin* (2009) 45 Cal.4th 390, 432.)  Mendoza does not persuasively argue jury selection might have differed with the assistance of a second attorney and he does not challenge the overwhelming evidence of guilt.  On this record, "there is no reasonable probability of a more favorable outcome had *Keenan* counsel been appointed."  (*Ibid.*, fn. omitted [denial of *Keenan* counsel harmless under *People v. Watson* (1956) 46 Cal.2d 818]; *People v. Williams* (2006) 40 Cal.4th 287, 302 ["even if denial of *Keenan* counsel was error, it was not prejudicial"].)

Mendoza also argues the denial of his request for a second attorney violated his federal constitutional right "to a public trial by functionally closing the courtroom to the public" during jury selection.  Mendoza insists he was denied a public trial because his co-counsel was not permitted to sit at counsel table and instead was forced "to take up the only publicly-available seat" in the gallery during voir dire.  A "criminal defendant's Sixth Amendment right to a public trial extends to jury selection."  (*People v. Virgil* (2011) 51 Cal.4th 1210, 1237.)  But Mendoza "did not assert his right to a public trial" in the lower court, despite having ample opportunity to do so.  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1292, fn. 27.)  Thus, the claim is forfeited.  (*Ibid.*; *Virgil*, at p. 1237.)

The claim also fails on the merits as the "courtroom was not closed."  (*People v. Virgil*, *supra*, 51 Cal.4th at pp. 1237–1238.)  Jury selection "was held in open court" and there is no indication the public was excluded from the courtroom.  (See *People v. England* (2000) 83 Cal.App.4th 772, 778–779 [security measures making it more difficult for the public to attend trial did not violate the defendant's public trial right]; cf. *United States v. Allen* (9th Cir. 2022) 34 F.4th 789, 796–800 [district court order prohibiting public from

7

entering the courtroom and denying the defendant's request to video-stream the proceedings violated the defendant's right to a public trial].)

Even if we credit Mendoza's assertion that the public was temporarily excluded for a portion of jury selection, we would conclude any de minimus exclusion was justified by the public health emergency, and animated by a desire to protect the parties, court personnel, and the jury from COVID-19. (*People v. Woodward* (1992) 4 Cal.4th 376, 383–386 [public trial guarantee may be rebutted by a showing that excluding the public is necessary to protect a " 'higher value' " such as maintaining security]; *People v. Bui* (2010) 183 Cal.App.4th 675, 686–689 [temporary exclusion of the defendant's family members from courtroom during jury selection did not require reversal].) Thus, any brief exclusion of the public from a portion of jury selection did not deprive Mendoza of his right to a public trial. (*People v. Virgil, supra*, 51 Cal.4th at pp. 1237–1238.)

## II.

Mendoza next argues the trial court violated his federal constitutional right of confrontation by requiring witnesses to wear masks while testifying. A criminal defendant's Sixth Amendment confrontation right includes the right " ' "to face those who testify against him, and the right to conduct cross-examination." ' " (*People v. Alvarez* (2022) 75 Cal.App.5th 28, 35 (*Alvarez*).) "The central concern of the confrontation clause 'is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' [Citation.] This concern is satisfied when the witness: (1) is physically present for his or her testimony; (2) testifies under oath; (3) is subject to cross-examination; and (4) may have his or her demeanor observed by the trier of fact." (*People v. Bharth* (2021) 68 Cal.App.5th 801, 814.)

8

A defendant's failure to object to an alleged confrontation clause violation forfeits the claim on appeal. (*People v. Arredondo* (2019) 8 Cal.5th 694, 710.) The purpose of the forfeiture rule is to allow the trial court to justify its ruling and, if applicable, to correct the error. (*Ibid.*; *In re Sheena K.* (2007) 40 Cal.4th 875, 881.) In the trial court, Mendoza raised no objection to the mask order. His failure to do so deprived the court of an opportunity to make " 'findings on the record regarding the necessity' " of the order or to correct any alleged error. Accordingly, Mendoza's confrontation clause claim is forfeited. (*Arredondo*, at p. 710; *People v. Gonzales*, *supra*, 54 Cal.4th at p. 1292, fn. 27.) On appeal, Mendoza offers no persuasive justification to deviate from the forfeiture rule. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"].)

We also reject the claim on the merits, following a trio of cases concluding that trial court orders requiring witnesses to wear face coverings during the early months of the pandemic did not violate the confrontation clause. (*Edwards*, *supra*, 76 Cal.App.5th at pp. 525–527; *Lopez*, *supra*, 75 Cal.App.5th at pp. 232–236; *Alvarez*, *supra*, 75 Cal.App.5th at pp. 34–39.) *Alvarez* is particularly instructive. In that case, witnesses testified while wearing masks covering the tip of their "nose and mouth," but jurors could "see each witness's eyes and face from the tip of the nose to the top of the head." (*Id.* at p. 35.) On appeal, the defendant argued the mask order "interfered with the jury's ability to assess witness demeanor and thus violated his Sixth Amendment right to confrontation." (*Id.* at pp. 30–31.)

The Second District Court of Appeal rejected that argument. (*Alvarez*, *supra*, 75 Cal.App.5th at p. 34.) It began by explaining " ' "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial," . . . a

9

preference that "must occasionally give way to considerations of public policy and the necessities of a case." ' [Citations.]  The face-to-face requirement can be dispensed with, but 'only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.' [Citations.]  This public policy exception is not a general one; it must be applied on a case-by-case basis." (*Alvarez*, at pp. 35–36, quoting *Maryland v. Craig* (1990) 497 U.S. 836, 845–849.)  Next, *Alvarez* held the masking order furthered an important public policy — protecting the public from a lethal and contagious disease — while retaining essential safeguards of reliability — witnesses testified in the courtroom, in the presence of the defendant, under oath, and subject to rigorous cross-examination.  (*Alvarez*, at pp. 36–38.)

The *Alvarez* court acknowledged the witnesses' masks partially covered their faces, but held jurors were nevertheless able to observe significant aspects of the witnesses' appearance, including their "eyes, tops of the cheeks, and the body," as well as their "posture, tone of voice, cadence and numerous other aspects of demeanor."  (*Alvarez*, *supra*, 75 Cal.App.5th at p. 38.)  *Alvarez* explained the jurors could " 'observe the witnesses from head to toe.  They will be able to see how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak.  They will be able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads.  The Confrontation Clause does not guarantee the right to see the witness's lips move or nose sniff, any more than it requires the jurors to subject the back of a witness's neck to a magnifying glass to see if the hair raised during particularly probative questioning.' "  (*Ibid.*, fn. omitted.)  Finally, *Alvarez* observed that "nearly every state and federal court to consider the issue during [the] COVID-19 pandemic has found no

10

confrontation violation because a witness was wearing a mask." (*Id.* at p. 38 & fn. 7.)

*Lopez*, *supra*, 75 Cal.App.5th 227, reached the same conclusion, holding the "mask requirement did not meaningfully diminish the face-to-face nature of the witness testimony. The witnesses testified in court, under oath and were subject to unfettered cross-examination by counsel. The mask requirement did not significantly obstruct the jury's ability to assess witness demeanor. The jurors could see the witnesses' eyes, hear the tone of their voices, and assess their overall body language. 'To whatever slight extent masks impinge on [a defendant's] Confrontation Clause right to see a witness's full facial expressions, requiring them is justified by important public policy interests to protect the health and safety of those in the courthouse while allowing court functions to proceed during a pandemic.' " (*Id.* at p. 234, brackets in original.) *Edwards* echoed these holdings. There, the appellate court concluded the mask order did not violate the defendant's confrontation rights because the jurors "saw and heard [the] witnesses. Under oath, the witnesses responded to . . . cross-examination. The jurors saw and heard the witnesses' reactions to the confrontation. The masks covered noses and mouths to minimize disease transmission. This was scrupulous adherence to the written law during a public health emergency. The confrontation clause permits a judge to follow national safety guidelines." (*Edwards*, *supra*, 76 Cal.App.5th at p. 527.)

The circumstances here are indistinguishable from *Alvarez*, *Lopez*, and *Edwards*. We are persuaded by these well-reasoned decisions, and we join

11

them in holding the mask order did not violate Mendoza's confrontation clause rights.[1]

### III.

Finally, Mendoza argues — and the Attorney General agrees — the sentence must be vacated, and the matter remanded for resentencing in light of Senate Bill No. 567 (2021–2022 Reg. Sess.; Senate Bill 567). Enacted while this appeal was pending, Senate Bill 567 amended "section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence. [Citation.] A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt." (*People v. Flores* (2022) 75 Cal.App.5th 495, 500, fn. omitted.)

In January 2021, the trial court sentenced Mendoza to the upper term of three years in prison. In doing so, the court recited several aggravating factors, including that Mendoza placed a child at risk during the pursuit, and that Mendoza had a prior conviction for willful flight or attempting to elude a pursuing peace officer causing serious bodily injury (Veh. Code, § 2800.3, subd. (a)). But the aggravated factors were not established by stipulation, proven true beyond a reasonable doubt, or based on prior convictions evidenced by a certified record of conviction. Thus, remand is necessary for the court to resentence Mendoza under amended section 1170, subdivision

---

[1] Mendoza also insists the mask order violated his right to an impartial jury in violation of the Sixth Amendment. This claim, like Mendoza's other constitutional claims, is forfeited. (*People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 901–902.) We decline Mendoza's invitation to address the merits notwithstanding his failure to raise the issue below.

(b).  (*People v. Jones* (2022) 79 Cal.App.5th 37, 44.)  We express no opinion as to the appropriate sentence on remand.

As remand for resentencing is required, we need not address Mendoza's assertion that the trial court issued a "retaliatory upper term sentence after engaging in judicial plea bargaining."  And we reject Mendoza's cumulative error argument.  (*People v. Duff* (2014) 58 Cal.4th 527, 562 [no cumulative error when there is "nothing to cumulate"].)

## DISPOSITION

The judgment is affirmed.  The sentence is vacated, and the matter is remanded for resentencing consistent with Senate Bill 567.

                                         _____

                                         Rodríguez, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.


A161765


14